**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

**Petition for Warrant or Summons for Person Under Supervision**

Person Under Supervision:  Courtney Carter          Case Number: 2:21CR00393-1 NBF
                                                     USM Number:  72083-509

Name of Sentencing Judicial Officer: The Honorable Nora Barry Fischer
                                     Senior United States District Judge

Date of Original Sentence: June 10, 2024

Original Offense: Felon in Possession of a Firearm and Ammunition, 18 U.S.C. § 922(g)(1)

Original Sentence: 28 months at Count 1 of the indictment at Criminal No. 21-393. Said term of incarceration shall run concurrently to sentence imposed at Docket No. NT 596-2023 by Magistrate Judge in Clairton, PA noted in para. 57 of Presentence Investigation report with 3 years' supervised release to follow.

Type of Supervision: Supervised Release          Date Supervision Commenced: May 6, 2025
                                                 Expiration Date: May 5, 2028

---

**PETITIONING THE COURT**

[X]   To issue a warrant

The probation officer believes that the person under supervision has violated the following condition of supervision:

**Violation Numbers One, Two, & Three**

**Mandatory Condition #2**: *"You must not unlawfully possess a controlled substance."*
**Mandatory Condition #3**: In part *"You must refrain from any unlawful use of a controlled substance."*
**Special Condition #1**: *"The defendant must not use or possess any controlled substances without a valid prescription. If the defendant does have a valid prescription, the defendant must disclose the prescription information to the probation officer and follow the instructions on the prescription."*

**Nature of Noncompliance**

On May 14, 2025, Carter submitted a urine sample that later returned presumptively positive for amphetamines, marijuana and buprenorphine. On May 14, 2025, Carter admitted to the undersigned officer that he would be positive for marijuana and Xanax and signed an admission form admitting to use.

Courtney Carter
2:21CR00393-1 NBF

On August 7, 2025, Carter submitted a urine sample that later returned presumptively positive for amphetamines, marijuana, buprenorphine, and oxycodone. On that same day, Mr. Carter signed an admission form stating that he took a pressed pill. Mr. Carter stated that while incarcerated in the Bureau of Prisons he was prescribed suboxone. He was instructed to provide the prescription but failed to present his prescription.

**<u>Violation Number Four</u>**

**Standard Condition #2**: *"After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed."*

**<u>Nature of Noncompliance</u>**

This officer attempted a home inspection on May 20, 2025, and was informed by Mr. Carter's aunt that he did not reside at that address and may reside with his paramour. She did not have any information regarding his paramour and where she resided.

On July 1, 2025, this officer attempted to see Mr. Carter but he was not home and would not share his location with this officer. This officer attempted to call Mr. Carter and when he did not answer the phone, this officer sent a text message instructing Mr. Carter to report to the office the next day for which he responded "ok". Mr. Carter never reported to the office the following day.

On July 15, 2025, this officer attempted to see Mr. Carter at his reported address; a gentleman answered, later identified as his uncle who stated that Mr. Carter did not live there. This officer spoke to Mr. Carter when he called from a new number stating that his phone was run over. Mr. Carter stated he was using his paramour's phone and stated her name was Mikayla Johnson. When Mr. Carter was asked to provide the address for his paramour, he refused. This officer reminded Mr. Carter of his conditions and explained that this officer had tried several times to see him at his home, but he always claimed that he was at someone else's house, and he would not share his location. Mr. Carter subsequently hung up on this officer. This officer texted Mr. Carter asking for his paramour's address and he refused to provide it. This officer attempted to see Mr. Carter later in the day and called the number that Mr. Carter used earlier, and the call went to voicemail. This officer instructed Mr. Carter to call this officer back, which he failed to do.

On July 16, 2025, the following day, Mr. Carter called this officer stating that he fell asleep around 20:00pm the night before. This officer instructed Mr. Carter to report to the office. Mr. Carter never reported to the office as instructed.

On July 21, 2025, this officer attempted to see Mr. Carter at his home but his uncle opened the door and stated that Mr. Carter was not home and does not live there. His uncle stated that he has a room there but almost never sees him.

At the time of this report, this officer attempted to see Mr. Carter on a variety of days and at different times throughout the day at his home and has not seen him at his reported address since the initial home inspection conducted on May 27, 2025.

**Violation Number Five**

**Standard Condition #4**: *"You must answer truthfully the questions asked by your probation officer."*

**Nature of Noncompliance**

On June 30, 2025, Mr. Carter called this officer to report police contact. Mr. Carter stated that he was driving his paramour's car when he was issued citations. Mr. Carter stated his paramour's name was Diamond Jackson.

On July 15, 2025, this officer asked Mr. Carter his paramour's name which he reported as Mikayla Johnson. This was on the same day that he broke his phone and used his paramour's phone to contact the undersigned.

On August 11, 2025, this officer spoke with Mr. Carter's paramour on the same number that was used to call this officer on July 15, 2025. She stated that her name was Diamond Wilson. This officer later learned that the paramour's actual name is Diamond Keefer. It is believed that Mr. Carter has not been honest about the identity of his paramour.

**Violation Number Six**

**Standard Condition #5**: *"You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change."*

**Nature of Noncompliance**

Since the beginning of supervision, this officer has been informed on multiple occasions and by multiple people that Mr. Carter does not live at his reported address. This officer has been unable to see Mr. Carter at his reported address other than the one time a home inspection was conducted on May 27, 2025. He consistently reported he resided at the address of record even when confronted with the information that his relatives said he does not live there.

**Violation Number Seven**

**Standard Condition #7**: *"You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change."*

3

Courtney Carter
2:21CR00393-1 NBF

**Violation Number Eight**

**Special Condition #6**: *"The defendant must participate in the United States Probation Office's Workforce Development Program as directed by the probation officer."*

**Nature of Noncompliance**

On May 27, 2025, this officer and Mr. Carter discussed employment and Mr. Carter stated that he needed state identification. Mr. Carter stated that he was going to the Department of Motor Vehicles that Thursday to get his state identification.

On June 30, 2025, and July 15, 2025, this officer sent Mr. Carter job opportunities.

On July 29, 2025, Mr. Carter asked this officer to help him obtain his driver's license and employment. He was instructed to report to the probation office on Tuesdays to participate in job club. This officer explained that the specialist who runs the program could help him with his driver's license and provide employment resources. Mr. Carter has never attended a job club session which is held weekly.

Mr. Carter started supervision on May 6, 2025, and has remained unemployed since that time.

**Violation Number Nine**

**Standard Condition #13**: *"You must follow the instructions of the probation officer related to the conditions of supervision."*

**Nature of Noncompliance**

On May 26, 2025, Mr. Carter informed this officer that he was at his aunt's house, which was a different aunt than the one he was living with. This officer instructed Mr. Carter to provide his aunt's address for which he refused.

On July 15, 2025, this officer instructed Mr. Carter to provide the address of his paramour, and he refused.

On July 1 and July 16, 2025, this officer instructed Mr. Carter to report to the office, and he failed to do so on both occasions.

Around October 30, 2025, Mr. Carter completed residential treatment with Recovery Centers of America and started a program with Angel's Light where he signed a release of information, and this officer was able to communicate with the provider. On December 12, 2025, this officer contacted Angel's Light to determine the process to see Mr. Carter. On December 19, 2025, the provider stated they could neither confirm nor deny any information which could indicate that a release of information was no longer on file permitting them to share information about Mr. Carter with the probation office.

On February 18, 2026, this officer met Mr. Carter at City Mission where he was instructed to provide a urine sample. Mr. Carter refused to provide a urine sample and told this officer to suck his penis.

4

## Violation Number Ten

**Special Condition #4**: *"The defendant must participate in an inpatient or outpatient substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise defendant's participation in the program (provider, location, modality, duration, intensity, etc.). Based on ability to pay, the defendant must contribute to the costs of services for any such treatment in an amount determined by the probation officer but not to exceed the actual cost."*

## Nature of Noncompliance

On June 16, 2025, this officer informed Mr. Carter that he must complete a substance abuse evaluation. Mr. Carter stated that he already did that while on pre-trial supervision and it does not work, and he would not use illegal substances anymore. This officer informed him that he is required to complete a substance abuse evaluation will on supervised release. Mr. Carter attempted to state that transportation was an issue, and this officer directed Mr. Carter to contact Medical Assistance Transportation Program for assistance. This officer provided their contact number and explained the program to him by stating they would help him with transportation to treatment.

Mr. Carter was scheduled for a substance abuse evaluation on June 30, 2025. He failed to show up for this evaluation. Mr. Carter stated that he could not do the evaluation without a state identification which was inaccurate.

Mr. Carter's substance abuse evaluation was rescheduled for August 5, 2025. Mr. Carter never showed up for this evaluation. His evaluation was again rescheduled for August 11, 2025, and he missed this evaluation as well.

On August 13, 2025, this officer conducted a 3-way call with Mr. Carter and the treatment provider. During this call, the provider informed Mr. Carter that they could reschedule him but due to the number of evaluations he had already missed, if he missed this evaluation, they would not be able to reschedule him for 30 days. Mr. Carter informed the provider that he would be able to schedule the evaluation for the next day, August 14, 2025. Mr. Carter did not show for this evaluation.

Mr. Carter informed this officer that he wanted to go to Mon Yough, but when this officer called, they were full and could not take any more clients.

Mr. Carter stated he would like to go to Pathway to Care and Recovery in Pittsburgh. This officer called them and learned that Mr. Carter could go anytime. They are open 24 hours a day, seven days a week and he can walk in to complete his evaluation.

On August 20, 2025, this officer provided Mr. Carter with the information for Pathways to Care and Recovery including their phone number, address and the programs hours of operation highlighting he can walk in to complete an evaluation. This officer asked when he could complete this and Mr. Carter responded, "I'll figure out when I can do it idk right now".

Mr. Carter did not complete an evaluation until October 3, 2025, with Recovery of America in Monroeville. Results of the evaluation recommended he participate in intensive inpatient treatment which he completed. Subsequently, he was referred to Angel's Light, a hallway house.  He was at Angel's Light until December 24, 2025, when Greensburg State Police were dispatched to the location after Mr. Carter was kicked out of the program for assaulting another patient.

Reportedly, Mr. Carter went to Gateway Rehabilitation Center in Mount Pleasant. On January 21, 2026, Carter reported completing this program and stated he had his discharge paperwork. This officer asked if he signed a release of information and Carter stated no. This officer instructed Carter to send him pictures of his discharge paperwork which he failed to do. This officer cannot confirm if he attended and/or completed inpatient treatment at this facility.

On January 21, 2026, Carter reported that he was now at Pyramid in Tyrone, PA, for inpatient treatment. This officer instructed Mr. Carter to sign a release of information so his attendance and progress could be verified. On January 29, 2026, this officer asked Mr. Carter if he signed the release of information and he stated that he did not because he was sick. He was asked if he was currently at the facility and Carter reported yes and this officer requested the facilities address, and he reported he did not know. Carter was asked to provide the program's phone number so this officer could conduct a 3-way call with staff to verify his attendance. Carter refused, stating he did not know their number. This officer informed Carter that it would not be a problem because he could look up their number and Carter stated he was not going to do that. After further discussion Carter discontinued the call and hung up the phone. Carter then texted this officer and informed him that he would give consent tomorrow and he did not know why this officer was making everything so difficult. On February 2, 2026, this officer again asked Mr. Carter if he signed a release of information and on February 3, 2026, Mr. Carter responded that he would do so that day. Later that day, Carter reported that he did not sign a release of information and that he was leaving that facility to go to City Mission.

On March 2, 2026, City Mission informed this officer that Carter was escorted out by police and kicked out of the program for being aggressive and threatening staff. Mr. Carter informed this officer that he went to an inpatient drug and alcohol facility in Aliquippa, PA. This officer informed Carter that he needed the information for the facility. This officer received the information about a week later. Mr. Carter completed treatment at Gateway Rehabilitation Center in Aliquippa, PA. This information was confirmed, and he is currently at Highland House, which is a halfway house in New Castle, PA.

## Violation Number Eleven

**Standard Condition #9**: *"If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours."*

## Nature of Noncompliance

On December 24, 2025, Greensburg State Police were contacted due to Carter getting into a physical altercation with another patient and he was instructed that he could no longer participate in the program. On February 18, 2026, Carter was asked about having police contact on December 24, 2025, and he confirmed that he did. Mr. Carter failed to report this incident within 72 hours and only confirmed this information when confronted by this officer on February 18, 2026.

## U.S. Probation Officer Recommendation:

The probation office has continued to try and work with Mr. Carter, but he continues to violate the conditions of his supervision. Mr. Carter's behavior continues to escalate with him getting into physical altercations with other patients at treatment facilities, threatening staff and his continued aggression towards this officer. Carter's self-destructive behavior has continued since his time on pre-trial supervision where on October 20, 2022, his bond was revoked, and he was ordered to self-surrender, and he failed to report as instructed. Due to Carter's escalated and aggressive behavior and his history of not reporting as

Courtney Carter
2:21CR00393-1 NBF

instructed, being evasive regarding his whereabouts and not providing this officer with requested information to effectively provide supervision and monitor his compliance with the conditions of supervision, the probation office respectfully requests that a warrant be issued so that Mr. Carter can show cause as to why his supervised release should not be revoked.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 8, 2026

Respectfully submitted,                          Approved,

|  | Michael Pangan 2026.04.10 09:39:45 -04'00' |  |  | Terrell Lewis 2026.04.08 18:25:41 -04'00' |
|---|---|---|---|---|

by _____          by _____
Michael Pangan                                    Terrell L. Lewis
U.S. Probation Officer                          Supervisory U.S. Probation Officer

THE COURT ORDERS:

☐ No Action
☐ The Issuance of a Warrant
    ☐ No Bond is set
    ☐ Bond is set at _____
    ☐ Bond is at the discretion of the Magistrate Judge
☐ The Issuance of a Summons, *with an initial appearance scheduled in accordance with Fed.R.Crim.P. 32.1 as follows*:

| Initial Appearance Date: |  |
|---|---|
| Initial Appearance Time: |  |
| Courthouse: |  |
| Courtroom Number: |  |

☐ Telephonic Status Conference
☐ Other: _____

_____

THE COURT FURTHER ORDERS THAT:

☐ This Order will not be filed under seal, and the Petition and Violation Worksheet shall be unsealed upon the issuance of this Order; **or**

☐ This Order shall be filed under seal, and this Order, the Petition, and the Violation Worksheet shall remain under seal until the earlier of: 1) notice of arrest (if an arrest warrant is issued in this case); 2) execution of the summons (if the summons has been filed under seal in this case); or 3) further Order of Court.

7

Courtney Carter
2:21CR00393-1 NBF


_____
The Honorable Nora Barry Fischer
Senior United States District Judge


_____
Date